# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

     -v-                                                       Case No. 11-Cr-301

**WALTER W. STERN, and**
**NORMA LEONARD-ALLEN,**

     **Defendants.**

## DECISION AND ORDER

This matter is scheduled for a jury trial commencing on Monday, June 18, 2012. Having considered the arguments of the parties as elaborated upon during the hearing conducted on June 15, 2012, the Court addresses the parties' pending motions.

*Motion and Supplemental Motion for Continuance*

Defendant Walter W. Stern, III, ("Stern") who is charged with knowingly conspiring with co-defendant Norma Leonard-Allen ("Leonard-Allen"), to commit money laundering offenses defined in 18 U.S.C. § 1956(a)(1)(b)(i), requests a continuance of the trial date to an unspecified time.

The determination of whether to continue the trial date is a matter of this Court's discretion. *See United States v. Farr*, 297 F.3d 651, 655 (7th Cir. 2002). "A trial date once set must be adhered to unless there are compelling reasons for granting a continuance.'" *Id.* (quoting *United States v. Reynolds*, 189 F.3d 521, 527 (7th Cir. 1999)). However, at the same time, a

court cannot have a " 'myopic insistence upon expeditiousness in the face of a justifiable request for delay.'" *United States v. Robbins*, 197 F.3d 829, 846 (7th Cir. 1999) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

In evaluating a request for a continuance, this Court is to weigh seven non-exhaustive factors: 1) the amount of time available for preparation; 2) the likelihood of prejudice from denial; 3) the defendant's role in shortening the effective preparation time; 4) the degree of complexity of the case; 5) the availability of discovery from the prosecution; 6) the likelihood a continuance would satisfy the movant's needs; and 7) the inconvenience and burden to the court and its pending case load. *Farr*, 297 F.3d at 655 (citations omitted). The weight of these factors will vary in any given situation. *Id.*

In seeking a continuance of the trial date, Stern is concerned that Leonard-Allen may not testify at a joint trial and asserts that this will present a variety of problems for him – including that the jury may speculate about why she is not testifying at joint trial. Although alluding to situations where a joint trial may be prejudicial, implicitly invoking Rule 14 of the Federal Rules of Criminal Procedure, Stern raises the specter of conflicting defenses between the two defendants. However, it is well established within this circuit, that severance is only necessary if the defendants' defenses are mutually antagonistic. *See United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987) ("Unless the defenses are so inconsistent that the making of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless the acceptance of a defense precludes acquittal of other defendants, it is not necessary to hold

2

separate trials."). Stern does not contend that his defense is mutually antagonistic with that of Leonard-Allen.

Stern also argues for severance under *Bruton v. United States*, 391 U.S. 123, 127-28 (1968), which holds that admission of a co-defendant's confession inculpating the defendant at a joint trial where the co-defendant does not testify and, therefore, cannot be cross-examined, violates a defendant's Sixth Amendment right to confrontation. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987), subsequently rejected a *Bruton* challenge to a confession that was not incriminating on its face, but later became so only when linked with evidence introduced later at trial.

In raising the *Bruton* issue, the name "Walter Stern" on the client intake form that Leonard-Allen completed at Attorney Mary A. Losey's office is not a confession because it does not "expressly implicate" Stern in a money laundering conspiracy and is not "powerfully incriminating." *Richardson,* 481 U.S. at 208. Instead, it becomes incriminating only when linked with the other evidence that the government intends to introduce at trial such as the purchase of certificates of deposit in Stern's name using funds that were concealed from the bankruptcy court. *Richardson* governs the statement at issue and, therefore, the intake form does not require severance.

*Bruton* is further limited to cases where the out-of-court confession is otherwise inadmissible. *See United States v. Hamilton*, 19 F.3d 350, 356 (7th Cir. 1994). As will be further explained, the intake form is admissible against Leonard-Allen as the statement of a party opponent under Rule 801(d)(2)(A), and against Stern as a co-conspirator statement under Rule

3

801(d)(2)(E) or the residual clause of Rule 807. Therefore, it is admissible without a limiting instruction. *See Hamilton*, 19 F.3d at 356.

Stern also raises the question of whether all of Leonard-Allen's grand jury testimony will be admissible at trial regardless of whether she testifies. He also refers to the involvement of both Daniel W. Stiller ("Stiller"), who is representing Leonard-Allen in this case and, Patrick K. Cafferty ("Cafferty"), the attorney who represented Leonard-Allen in her earlier related bankruptcy fraud case. Stern has been aware of these issues throughout this litigation. Although Stern only recently received the sealed grand jury testimony and learned last week of the government's arguments for the admissibility of the intake form, Stern has had five months to consider the issues, the possible theories under which the government might seek to introduce the intake form, as well as any issues related to the involvement of other attorneys in this action.

An additional thread advanced for a continuance is the possibility that Stern may decide that he must call the prosecutor as a witness to testify about a pre-grand jury interview of Leonard-Allen. The interview – whose participants included Cafferty, Leonard-Allen's prior attorney, FBI Special Agent Michael Johnson ("Johnson"), and the prosecutor – was not reduced to a written report. Stern has been informed that Leonard-Allen's statements during that meeting were substantively identical to her testimony in the grand jury – Stern has that testimony. Stern has also been informed that Johnson can explain why he did not prepare a written report and that he will also testify that her statements were exculpatory of Stern.

Ethical rules prohibit a lawyer, with narrow exceptions not applicable here, from being both an advocate and a witness. *See* Wisconsin Supreme Court Rule 20:3.7. The Court

4

of Appeals has observed that a prosecutor may choose to testify "in extraordinary circumstances and for compelling reasons, usually where the evidence is not otherwise available." *United States v. Johnston*, 690 F.2d 638, 644 (7th Cir. 1982). The circumstances presented are not extraordinary and the evidence is otherwise available.

Here, Stern's attorney has had five months to prepare, and he has not established that denial of the continuance is likely to result in prejudice from denial. This extended time resulted from two prior continuances of the trial date – once at Stern's behest and once at Leonard-Allen's. While Stern has not played a role in shortening the effective preparation time, the case is not complex – neither the facts nor the legal theories are difficult to master. Discovery has been available to Stern with the exception of the production of grand jury materials, which were produced last week – close to the trial date as is typical in this District. Furthermore, Stern has not demonstrated that a continuance would satisfy his needs – it would just serve to delay the trial of this matter. Additionally, the motion was filed just five days before the scheduled trial date.

The jury has been summoned, is expecting to appear on Monday, and the Court's trial calendar is busy. Even if a continuance is possible, given the Court's calendar, Stern has not demonstrated a sufficient reason to warrant a continance of the trial. Therefore, Stern's motion for a continance and supplemental motion for a continuance (ECF No. 22, 22-1) are denied.

*Motion in Limine to Admit Losey's Intake Form*

The Government seeks an order ruling in limine that a client intake form obtained from Losey, Leonard-Allen's bankruptcy attorney (Ex. A, Mot. to Admit.) is admissible under

5

the Federal Rules of Evidence (ECF No. 18). Leonard-Allen asserts that the evidence is not admissible because it was a confidential document obtained in violation of the attorney-client privilege. In particular, Leonard-Allen asks this Court to deem the intake form, as well as any testimony about its content, inadmissible because: (1) Losey produced the document belonging to Leonard-Allen, without notice to and without the consent of Leonard-Allen; (2) Losey disclosed communications between her and Leonard-Allen that were protected by the attorney-client privilege; and (3) Losey revealed, without Leonard-Allen's informed consent, information relating to Losey's representation of Leonard-Allen.

Federal case law governs the privilege issue. *See* Fed. R. Evid. 501. As observed in *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir. 1980), "the attorney-client relationship itself does not create "(a) cloak of protection (which is) draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." (quoting *United States v. Goldfarb*, 328 F.2d 280, 281-82 (6th Cir. 1964)). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). As it is in derogation of the search for truth, the privilege must not be lightly created nor expansively construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974). The burden of establishing the existence of a privilege rests on the party asserting it. *Matter of Walsh*, 623 F.2d at 493.

The sole decision brought to the Court's attention that addressed the question "Did anyone refer Miss Sibson to you?," *In re Michaelson*, 511 F.2d 882, 886-87 (9th Cir. 1975)(applying Nevada law), made short shrift of it noting, "[w]e fail to see how the specific

6

information requested can be considered a confidential communication." Leonard-Allen has not met her burden of establishing that the communication was privileged.

Additionally, with respect to the Wisconsin Rules of Professional Conduct for Attorneys, Wisconsin Supreme Court Rule 20:1.6 governs confidential communications and Wisconsin Supreme Court Rule 20:1.9 addresses duties to former clients. Notably Wisconsin SCR 20:1.6(c)(5) specifically provides that "[a] lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: . . . (5) to comply with other law or a court order." Losey was complying with a Court order when she produced the intake form, and was allowed to disclose the form without violating her ethical obligations to Leonard-Allen.

The intake form is admissible under Rule 803(6), which creates a hearsay exception for records kept in the ordinary course of business. "A party establishes a foundation for admission of business records when it demonstrates through the testimony of a qualified witness that the records were kept in the course of a regularly conducted business activity, and that it was the regular practice of that business to make such records." *United States v. Given*, 164 F.3d 389, 394 (7th Cir. 1999). Under Rule 803(6), a qualified witness need not be the author of the document but must have personal knowledge of the procedure used to create and maintain the document. *See United States v. Muhammad*, 928 F.2d 1461, 1469 (7th Cir.1991). The government indicates that Losey will testify that the intake form is completed by the client prior to their first meeting, and that completion of the intake form is routine and that the forms are kept

in the client's file in the ordinary course of her law practice. Therefore, the intake form itself is admissible as a business record under Rule 803(6).

However, courts "may not permit the introduction of hearsay contained within hearsay unless each layer is properly admitted under an exception to Rule 802. Fed. R. Evid. 805." *United States v. Borrassi*, 639 F.3rd 774, 780 (7th Cir. 2011). Here, the information provided by Leonard-Allen -- the name "Walter Stern" -- is the sort of third-party statement that must also satisfy a nonhearsay definition or hearsay exception. See Fed. R. Evid. 805. The information provided by Leonard-Allen is admissible as the statement of a party-opponent under Rule 801(d)(2)(A). When offered by the United States, information provided by Leonard-Allen is non-hearsay by definition and admissible against her under Rule 801(d)(2)(A). For this reason, the intake form and the information contained thereon, including the name "Walter Stern," are admissible against Leonard-Allen under Rules 801(d)(2)(A) and 803(6). The intake form is admissible against Stern as a co-conspirator statement under Rule 801(d)(2)(E). A statement made by a member of a conspiracy is admissible pursuant to Rule 801(d)(2)(E) if the government proves by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy. *United States v. Prieto*, 549 F.3d 513, 523 (7th Cir. 2008). In order to satisfy the "in furtherance" requirement, the coconspirator's statement "need not have been exclusively, or even primarily, made to further the conspiracy." *United States v. Singleton*, 125 F.3d 1097, 1107 (7th Cir. 1997). The government has satisfied its burden even if the

statement is susceptible to alternative interpretations, so long as "some reasonable basis exists for concluding that the statement furthered the conspiracy." *Garlington v. O'Leary*, 879 F.2d 277, 284 (7th Cir.1989). Here, the preponderance of the evidence is that, as charged in the indictment, the money laundering conspiracy existed as of the date, July 6, 2005, when Leonard-Allen completed the intake form. The intake form is also admissible against Stern under the residual hearsay exception in Rule 807. Based on the foregoing, the United States motion in limine for a ruling admitting attorney Losey's client intake form (ECF No. 18) is granted.

*Motion in Limine Excluding Witnesses and Evidence*

The Government seeks an order *in limine* excluding certain witnesses and evidence proffered by Stern. The Government asserts the anticipated testimony of Leonard-Allen's daughters should be excluded as irrelevant under Rules 401 and 402 of the Federal Rules of Evidence. Defense counsel has advised that he intends to call three of Leonard-Allen's daughters to testify that they were unaware their mother, Leonard-Allen was going through bankruptcy. Presumably, their testimony is offered as evidence that Stern also did not know that Leonard-Allen was in bankruptcy. However, Leonard-Allen's relationship with her daughters is qualitatively different from her relationship with Stern. Stern is an attorney with whom Leonard-Allen was then-living; Stern represented her in prior federal litigation; and Stern consulted with Leonard-Allen's divorce attorney during the negotiation of the $95,000 Marital Settlement Agreement ("MSA"). For these reasons, the daughters' purported lack of knowledge does not "make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401

Stern's proffered testimony is best characterized as negative evidence, which is evidence offered to prove the nonexistence of a fact. Federal courts only allow such evidence if it tends to prove some fact of consequence in the case. *See e.g., United States v. Fearn*, 589 F.2d 1316, 1323 (7th Cir. 1978); *United States v. Laughlin*, 772 F.2d 1382, 1394 (7th Cir. 1985). The fact that Leonard-Allen's daughters did not know that their mother filed for bankruptcy is not probative of whether Stern knew of the bankruptcy. And more to the point, the daughters were not in a position to continuously monitor and know of conversations that occurred between their mother and Stern. *Laughlin*, 772 F.2d at 1394.

The Government also seeks to exclude the anticipated testimony of Stern's prior clients pursuant to Rules 402, 403, and 802 of the Federal Rules of Evidence. Defense counsel has also advised that he intends to call two of Stern's former clients to testify that "Mr. Stern persuaded them not to utilize the services of Mary Losey." The testimony is irrelevant under Rule 402 because it does not tend to prove or disprove whether Stern did, in fact, refer Leonard-Allen to attorney Losey. Further, whatever marginal relevance there may be is substantially outweighed by the danger of confusion and a waste of time. To the extent that Stern intends to present evidence, through these witnesses, that attorney Losey is not well-regarded and therefore he would not have referred clients, the United States would be forced to respond with contrary evidence regarding her reputation in the relevant legal community, Losey's professional abilities are collateral to any issue in this case and would require a mini-trial that would only mislead and confuse the jury. More importantly, the proffered testimony about what Stern told

10

the former clients is hearsay under Rule 801(c) and inadmissible under Rule 802. The proffered testimony consists entirely of Stern's own statements – offered by Stern. The former clients' proffered testimony does not fit within the definition of non-hearsay in Rule 801(d) or the hearsay exceptions in Rules 803 and 804.

The Government also requests that the Court exclude the anticipated testimony of Stern's private investigator, James Christianson ("Christianson"), under Rules 402, 403, and 802 of the Federal Rules of Evidence. Stern's counsel has identified Christianson as a potential witness. However, Counsel's June 1, 2012, letter does not proffer the substance of Christianson's possible testimony.

However, based on a prior conversation with counsel, the Government believes that Christianson will testify as to what Stern said and did when Leonard-Allen's bankruptcy case re-opened. Presumably, this evidence would be offered to demonstrate that Stern acted like someone who had no prior knowledge of the bankruptcy. What Stern may have said upon the re-opening of the bankruptcy is hearsay when offered by Stern. *See* Fed. R. Evid. 801. With respect to what Stern may have done in connection with the reopened bankruptcy case, it is not clear why that would be relevant. Absent a proffer outside the presence of the jury, Christianson will not be permitted to testify about what Stern did after the bankruptcy was reopened.

The Government also asserts that Leonard-Allen's October 13, 2010, grand jury transcript may not be introduced under Rule 804(b)(1) of the Federal Rules of Evidence.

11

The United States intends to introduce redacted pages (1-3, 10-11) of Leonard-Allen's grand jury testimony as non-hearsay under Rule 801(d)(2)(A), which excludes from the definition of hearsay the statement of a party-opponent. Her grand jury testimony is the focus of the perjury charge alleged in count two. Stern's counsel has indicated that he intends to introduce the entirety of the grand jury transcript as a prior statement under oath, presumably under Rule 804(b)(1). That Rule sets forth a hearsay exception for prior testimony, where the declarant is unavailable, "if the party against whom offered had opportunity and similar motive to examine or cross-examine." Fed. R. Evid. 804(b)(1).

Stern assumes that Leonard-Allen will be unavailable as a witness at trial. At this juncture, it appears that she may not testify. If she does not testify, it is doubtful that Stern can introduce any portion of Leonard-Allen's grand jury testimony. *See United States v. Salerno*, 505 U.S. 317, 324-325 (1992) (grand jury testimony is not admissible if the United States does not have a "similar motive" to examine or cross-examine at the grand jury and trial stage); *United States v. Omar*, 104 F.3d 519, 523 (1st Cir. 1997) (upholding the exclusion of grand jury testimony because the United States, at the time of the grand jury testimony, did not have evidence with which to cross-examine the now-unavailable witness). Such is the situation in this case.

The last contention raised by the Government is that evidence regarding Losey's reputation and compliance with Wisconsin's ethical rules should be excluded. The evidence is excluded as irrelevant under Rule 402, and improper impeachment under Rule 608. The

Government's motion *in limine* to exclude certain witnesses and testimony (ECF No. 19) is granted.

Dated at Milwaukee, Wisconsin, this 15th day of June, 2012.

**SO ORDERED,**

_____
**HON. RUDOLPH T. RANDA
U.S. District Judge**