# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

    **v.**                                           **Case No. 11-CR-301**

**WALTER STERN III**
    **Defendant.**

## DECISION AND ORDER

The government charged defendant Walter Stern with conspiring to launder money, claiming that he helped his then-girlfriend, Norma Leonard-Allen, conceal assets she failed to disclose in a bankruptcy proceeding.[1] At trial, defendant argued that he did not even know about Leonard-Allen's bankruptcy at the time of the subject financial transactions, much less conspire with her to conceal the proceeds of her bankruptcy fraud through those transactions. He instead asserted that Leonard-Allen gave him the money (the proceeds of a marital settlement agreement she failed to disclose in her bankruptcy case) so he could help her manage it given her spendthrift ways. The jury convicted, but defendant won a new trial on appeal based on evidentiary errors by the district court.[2] The matter was re-assigned to me on remand.

---

[1] Leonard-Allen's failure to disclose those assets led to her conviction of bankruptcy fraud. See United States v. Leonard-Allen, No. 09-CR-190, 2010 WL 2490770 (E.D. Wis. June 16, 2010) (Sentencing Memorandum).

[2] Specifically, the court of appeals held that the district court abused its discretion in excluding on hearsay grounds defendant's testimony about why he went to the bank to complete the subject financial transactions. The court of appeals affirmed Leonard-Allen's conviction (at the same trial) of perjury based on her denial under oath before a grand jury that defendant had referred her to her bankruptcy attorney.

Before me now is defendant's motion to exclude as inadmissible hearsay a "client intake" form Leonard-Allen completed when she first met with her bankruptcy attorney, Mary Losey, in July 2005. Losey's form asked: "How did you select this office?" Leonard-Allen selected the box for "Friend/Referral" and wrote "√Walter Stern."[3] At the previous trial, the district court admitted the form under the co-conspirator exception to the hearsay rule, see Fed. R. Evid. 801(d)(2)(E), but the court of appeals raised doubts about that ruling:

> Standing alone, this statement [that defendant referred Leonard-Allen to Losey] tells us nothing about the subject matter of any agreement that may have existed between Leonard-Allen and Stern in July 2005. In determining whether the statement is admissible under the co-conspirator exception, the district court should take care to cross the "T's" and dot the "I's": that is, ensure that there is proof of an agreement to launder the money and that Leonard-Allen's act of writing the name fell within the scope of that agreement.

United States v. Leonard-Allen, 724 F.3d 780, 786-87 (7th Cir. 2013). However, on the government's petition for rehearing, the appellate court added: "We express no further opinion at this juncture on the question whether this evidence will be admissible at the new trial, either under the co-conspirator exception or some other theory. The answer will depend on the evidence before the court in the new trial." United States v. Leonard-Allen, Nos. 12-3299, 12-3663, 2013 WL 4573140, at *3 (7th Cir. Aug. 29, 2013).

The government now seeks to admit the form under Rule 807,[4] the residual hearsay exception rule, which provides:

> Under the following circumstances, a hearsay statement is not excluded by the

---

[3]The parties agree that the form itself is admissible as a business record, see Fed. R. Evid. 803(6), but that the statements on it present a second level of hearsay. Like the parties, I assume for purposes of this decision that Leonard-Allen filled out the form.

[4]Because the government relies on Rule 807 as the sole basis for admission, I need not discuss the co-conspirator exception.

2

rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a); see also Moffett v. McCauley, 724 F.2d 581, 583 (7th Cir. 1984) (stating that the requirements for admission are (1) trustworthiness, (2) materiality, (3) probative value, and (4) the interests of justice).[5]

As the proponent, the government bears the burden of demonstrating admissibility. See United States v. Robbins, 197 F.3d 829, 838 (7th Cir. 1999); Doe v. United States, 976 F.2d 1071, 1079 (7th Cir. 1991). Rule 807 is to be used rarely and in exceptional circumstances so that the exception does not swallow the hearsay rule. See Huff v. White Motor Corp., 609 F.2d 286, 291 (7th Cir. 1979). I address each of the Rule's requirements in turn.

### 1. Guarantees of Trustworthiness

In determining whether a statement is sufficiently reliable for purposes of the residual hearsay exception, the court should examine, among other factors, the probable motivation of the declarant in making the statement, the circumstances under which it was made, and the knowledge and qualifications of the declarant. United States v. Hall, 165 F.3d 1095, 1110 (7th

---

[5]Rule 807 was created in 1997 by combining and transferring the contents of former Rules 803(24) and 804(b)(5). Fed. R. Evid. 807 advisory committee notes. No change in meaning was intended. Id. Accordingly, in this decision I cite cases discussing former Rules 803(24) and 804(b)(5).

3

Cir. 1999) (citing Cook v. Hoppin, 783 F.2d 684, 690-91 (7th Cir. 1986)). Other relevant factors may include the character of the declarant for truthfulness and honesty and the availability of evidence on the issue; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the extent to which the witness's testimony reflects personal knowledge; whether the witness ever recanted the testimony; and whether the declarant's statement was insufficiently corroborated. Id. at 1110-11 (citing United States v. Seavoy, 995 F.2d 1414, 1418 (7th Cir. 1993)). The Seventh Circuit has cautioned, however, that these factors are neither exhaustive nor absolute, and the determination of the trustworthiness of a statement must be made based on the facts of each case. United States v. Mokol, 939 F.2d 436, 439 (7th Cir. 1991); see also Hall, 165 F.3d at 1111 ("Although these factors are neither exhaustive nor necessary prerequisites for admissibility of hearsay under 803(24), they shed light on the sort of considerations a district court should take into account when evaluating the 'trustworthiness' of a hearsay statement."). In making this determination, the court should focus on the circumstances that existed at the time the statement was made rather than those that may be added by using hindsight. Huff, 609 F.2d at 292; see also United States v. Shaw, 69 F.3d 1249, 1253 n.5. (4th Cir. 1995) ("Trustworthiness must emanate from the circumstances of a hearsay statement, not from its consistency with other evidence offered in the case.").

Defendant primarily argues that the statement at issue in this case lacks guarantees of trustworthiness because the declarant, Leonard-Allen, is a known liar, having been convicted first of defrauding the bankruptcy court and then of perjury before the grand jury. The parties vigorously dispute whether, and to what extent, Leonard-Allen's general character for truthfulness should be considered at this juncture. The government contends that Leonard-

Allen's character should not be relevant to admissibility under Rule 807; defendant will be free to attack her credibility at trial under Rule 806,[6] and the jury will ultimately decide what her statements are worth. Defendant counters that, based on its inclusion in Hall's list of factors, the declarant's character for truthfulness cannot be deemed irrelevant in deciding admissibility under Rule 807. See Hall, 165 F.3d at 1110. The government acknowledges Hall's list, but in tracing it back to the source the government notes that the Seventh Circuit progenitor – United States v. Guinan, 836 F.2d 350 (7th Cir. 1988) – did not actually identify the declarant's character as a relevant consideration.

Hall's list of factors first appeared in this circuit in United States v. Snyder, 872 F.2d 1351, 1356 (7th Cir. 1989). As authority for the list, the Snyder court offered a string-cite. Id. (citing Guinan, 836 F.2d at 355-58; United States v. Feldman, 761 F.2d 380, 387 (7th Cir. 1985); United States v. Marchini, 797 F.2d 759, 763-65 (9th Cir. 1986); United States v. Barlow, 693 F.2d 954, 962-63 (6th Cir. 1982); United States v. Boulahanis, 677 F.2d 586, 588-89 (7th Cir. 1982); United States ex rel. Haywood v. Wolff, 658 F.2d 455, 462-63 (7th Cir. 1981); United States v. West, 574 F.2d 1131, 1135-38 (4th Cir. 1978); United States v. Gonzalez, 559 F.2d 1271, 1273-74 (5th Cir. 1977); United States v. Vigoa, 656 F. Supp. 1499, 1512 (D.N.J. 1987), aff'd, 857 F.2d 1467 (3d Cir. 1988) (table)). Based on a review of those cases, it appears that the "character for truthfulness" factor came, near-verbatim, from Vigoa, which included it within a list of eight points for courts to consider in deciding whether to admit hearsay evidence (in that case, previous grand jury testimony) under the confrontation clause.

---

[6]Fed. R. Evid. 806 ("When a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness.").

5

656 F. Supp. at 1512 (stating that courts should consider, inter alia, "the character of the witness for truthfulness and honesty and the availability of evidence on the issue"). While the Vigoa court considered Rule 804(b)(5) earlier in its decision, it listed this factor in discussing the defendant's constitutional right to cross-examine.[7] Further, it does not appear that any of the subsequent Seventh Circuit cases considering the residual exception have, despite repeating the Snyder list, specifically relied on the declarant's general character for truthfulness in deciding admissibility.

In any event, Hall and Snyder did not purport to create an eight-factor test that district courts must work through in every case; rather, they collected potentially relevant factors mentioned in previous cases. Cf. United States v. Ryerson, 545 F.3d 483, 490 (7th Cir. 2008) ("Ryerson asks us to plod through a series of ten factors from our decision in United States v. Groves to determine whether apparent authority exists. But Groves did not create a ten-factor test – indeed, a test with that many variables would allow a court to justify virtually any outcome. Groves merely collected some relevant factors from previous cases[.]"). In some cases, the declarant's characteristics may be highly relevant, e.g., if the evidence suggested that at the time of the statement the declarant was delusional or incompetent. See, e.g., Huff, 609 F.2d at 293-94 (remanding for consideration of the declarant's mental capacity at the time he made the statement). In other cases, the declarant's general character for truthfulness may

---

[7] The Vigoa court cited no authority in support of its list. It is also worth noting that the Seventh Circuit did not at that time agree with Vigoa's treatment of grand jury testimony under Rule 804(b)(5) or the confrontation clause. See United States v. Yonkers Contracting Co., Inc., 701 F. Supp. 431, 436 (S.D.N.Y. 1988) (noting that Vigoa conflicted with Guinan). Of course, subsequent Supreme Court decisions have superseded Guinan and Vigoa on this point. See Crawford v. Washington, 541 U.S. 36, 68 (2004). Neither side has raised the confrontation clause in this case, presumably because they agree the statement at issue is not "testimonial."

say little about the trustworthiness of the particular statement under consideration; this is such a case.

Leonard-Allen's dishonest behavior after she filled out Losey's form tells me very little about the reliability of her statement that Stern made the referral. At the time of the statement, July 6, 2005, Leonard-Allen had not yet filed for bankruptcy, much less engaged in any fraud in that proceeding. A time-line of the key events is as follows:

- June 1, 2005: Leonard-Allen and her husband enter into marital settlement agreement ("MSA")

- June 10, 2005: first MSA payment sent to Leonard-Allen's lawyer, although that payment is not disbursed to Leonard-Allen until January 11, 2006

- July 6, 2005: Leonard-Allen completes Losey's intake form

- September 30, 2005: Leonard-Allen files for bankruptcy, fails to disclose MSA

- October 27, 2005: second MSA payment issued to Leonard-Allen

- November 10, 2005: Leonard-Allen falsely testifies at meeting of creditors in bankruptcy action

- January 14, 2006: Leonard-Allen receives discharge in bankruptcy

- January 17, 2006: third MSA payment issued to Leonard-Allen

- March 3, 2006: defendant purchases certificates of deposit with the proceeds of the first three MSA payments

- April 25, 2006: fourth MSA check issued to Leonard-Allen

- August 4, 2006: Leonard-Allen endorses proceeds of fourth MSA check to defendant

- January 6, 2007: defendant purchases second CD with proceeds of MSA payments

- January 10, 2007: Leonard-Allen's bankruptcy proceeding re-opened after her ex-husband's lawyer contacts the trustee

7

- October 17, 2007: Leonard-Allen's bankruptcy discharge revoked

- August 11, 2009: Leonard-Allen indicted for bankruptcy fraud

- January 27, 2010: Leonard-Allen pleads guilty to bankruptcy fraud

- October 13, 2010: Leonard-Allen testifies before the grand jury investigating defendant; denies defendant referred her to Attorney Losey

- December 20, 2011: defendant indicted for money laundering and Leonard-Allen for perjury

To the extent that Leonard-Allen's character for truthfulness may be attacked based on her convictions of fraud and perjury, it is important to note that she made the statement at issue nearly three months before she filed for bankruptcy, four months before she lied at the creditors' meeting, four years prior to her indictment for bankruptcy fraud, and more than five years before her false testimony before the grand jury.

Defendant argues that Leonard-Allen's subsequent fraud and perjury are not what made her a liar; rather, they are evidence that she tends to lie; and, given her character, Leonard-Allen needed no specific motive to lie on the form. As noted, however, the issue before me is not whether Leonard-Allen is, in general, dishonest; the issue is the trustworthiness of this particular statement; and defendant fails to explain how Leonard-Allen's character reflects on that issue. To the extent that Leonard-Allen's character may permit one to infer that she is willing to lie when it serves her interests (e.g., in concealing assets), there is no evidence that Leonard-Allen was engaged in, or planned to engage in, fraudulent conduct when she first met with Losey and completed the intake form in July 2005. Nor does the record suggest any other reason why Leonard-Allen may have been motivated to lie in filling out the intake form. Even if the information on the form did not directly pertain to Losey's legal advice, one would ordinarily want to provide accurate biographical and other information to a professional

8

providing important services.

Defendant suggests that Leonard-Allen may have been motivated to lie on the intake form in order to obtain special treatment or attention from Losey by dropping defendant's name. However, the record contains no evidence that Losey would have been more likely to take Leonard-Allen's case or work harder for her if told that defendant made the referral. Defendant had not previously sent Losey clients, and Losey never spoke with defendant about the case or thanked him for the referral.[8] The record before me suggests no reason why, at the time she made the statement, Leonard-Allen would have reason to lie about why she selected Losey's office. See United States v. Howard, 774 F.2d 838, 845 (7th Cir. 1985) (admitting statements made under circumstances that created no apparent motive to lie). Further, at the time she made the statement, Leonard-Allen could not have known that the answer to a referral question would matter, one way or the other, in a criminal prosecution occurring several years later. Cf. BoDeans Cone Co., L.L.C. v. Norse Dairy Systems, L.L.C., 678 F. Supp. 2d 883, 904 (N.D. Iowa 2009) (admitting under Rule 807 customer survey statements, where the participants could not at the time have known that they would later be used in litigation).

Finally, there is no reason to believe that Leonard-Allen lacked the knowledge or qualifications to make a statement as to who referred her to Losey. This information would particularly appear to be within her ambit. For all of these reasons, I find the statement

---

[8]Indeed, in opposing admission under the co-conspirator exception, defendant stated: "Everything about the way Attorney Losey presented her practice reasonably suggested that no special referral or 'password' was needed to obtain her services." (R. 113 at 14.) "Thus, there is absolutely no evidence anywhere in this record that suggests, or even allows the inference, that Leonard-Allen might believe that Attorney Losey would be more likely to take the case if Stern had referred her." (Id. at 15.)

9

sufficiently trustworthy.

**2.     Materiality**

There can be little doubt that Leonard-Allen's statement pertains to a material fact. Indeed, it goes to the core dispute in this case: did defendant engage in the subject financial transactions to help Leonard-Allen launder the proceeds of her bankruptcy fraud, or was he merely (in his mind, at least) helping her manage her money? In support of his version, defendant claims that he did not even know about Leonard-Allen's bankruptcy and thus could not have conspired to help her conceal the proceeds of her fraud in that matter. Leonard-Allen's statement on the intake form, that defendant referred her to bankruptcy counsel, if accepted, undercuts that defense.

**3.     Probative Value**

Defendant argues that the statement is almost meaningless because the question on the intake form to which it responds is ambiguous. The form asks: "How did you select this office?" It does not ask: "Who referred you?" Defendant speculates that Leonard-Allen could have written his name on the form because he (defendant) casually mentioned Losey's name at some point, not because he specifically referred Leonard-Allen to Losey for purposes of handling Leonard-Allen's bankruptcy. Leonard-Allen selected the box for "Friend/Referral" – writing in "√Walter Stern" – which strongly suggests that defendant referred Leonard-Allen to Losey. Defendant will be free to argue at trial that Leonard-Allen's response is not actually probative of a specific referral, but that argument goes to weight rather than admissibility.

Defendant also argues that the government failed to make reasonable efforts to obtain other evidence, such as confronting Leonard-Allen with the form and asking her about it;

10

instead, the government assumed that the form was evidence of perjury and charged Leonard-Allen with that crime.  However, the record shows that the government did interview Leonard-Allen in the hope that she would implicate defendant; she declined to do so.  Only then did the government, armed with a grant of immunity, compel Leonard-Allen to testify in front of the grand jury.  When she denied under oath that defendant referred her to Losey, the government indicted her for perjury.

**4.	Interests of Justice**

The purpose of the Federal Rules of Evidence is to "eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."  Fed. R. Evid. 102.  As the evidence at issue appears highly probative of a key issue in the case, I find that admitting it would assist the jury in determining the truth.  Given the highly unusual circumstances, admitting this evidence does not permit the narrow exception envisioned by Rule 807 to swallow the general rule of inadmissibility.

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 113) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 18th day of November, 2013.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge